**United States District Court**
**District of Massachusetts**

|  |  |  |
|---|---|---|
| _____ | ) | |
| | ) | |
| Cangrade, Inc., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. |
| v. | ) | 23-CV-12804-NMG |
| | ) | |
| Paylocity Corp., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**MEMORANDUM & ORDER**

**GORTON, J.**

Plaintiff Cangrade, Inc. ("plaintiff" or "Cangrade") files this action for injunctive relief and monetary damages alleging that defendant Paylocity Corporation ("defendant" or "Paylocity") has refused to proceed with a proposed merger agreement between the parties in bad faith.  Paylocity moves to dismiss (Docket No. 26) the action, in part, and to transfer certain counts to the United States District Court for the Northern District of California pursuant to a forum selection clause.

I.  **Background**

The dispute stems from merger negotiations between the parties in 2023.  Cangrade provides software services to employers and recruiters to help them hire, train and

-1-

professionally develop employees.  Paylocity offers a cloud-based human resources and payroll software product "suite".  The parties entered a Mutual Non-Disclosure Agreement ("MNDA") to help facilitate merger negotiations in July, 2023 and a Letter of Intent ("LOI") that described the terms of the potential merger in September, 2023.  Pursuant to the LOI, Paylocity planned to acquire Cangrade for $17.5 million.

Under the MNDA, Cangrade agreed that Paylocity agent Synopsys, Inc. ("Synopsys") would conduct an audit of the source code that supported Cangrade's proprietary software.  The MNDA provided that the confidential information at issue would only be evaluated for the purpose of the potential merger, that Paylocity would take reasonable care to protect the information and would be responsible "for any breach of this Agreement by any [representative]" of Paylocity.  It entered into a Code Owner Nondisclosure Agreement ("CONDA") with Synopsys in September, 2023, at which point Cangrade shared its source code with Synopsys.

The period of cooperation between the parties did not last long.  According to the complaint, in October, 2023, Cangrade's source code and other proprietary information was published on Github.com, a public repository for software code.  Cangrade complained to Paylocity and Synopsys about the breach and the

code was taken down.  Cangrade alleges that its confidential software was publicly available for at least two hours.

The complaint alleges that, on October 6, 2023, Synopsys completed its software audit and that, based on that audit, Paylocity identified areas of remediation for Cangrade to address.  Cangrade avers that all issues were remediated within a few weeks and that Paylocity expressed its satisfaction.  In November, 2023, however, Paylocity orally notified Cangrade that it would pause merger negotiations due to an unspecified security risk.  Paylocity expressed concern that issues identified during Synopsys's audit required additional time for review.  Although Cangrade does not specify when, Paylocity purportedly backed out of the merger.

Cangrade alleges that no security risk jeopardized the merger.  Between October 6 and November 3, 2023, the parties continued negotiations and exchanged nearly final drafts of a merger agreement.  Cangrade suggests that the real reason Paylocity balked was because of the full and unauthorized disclosure of Cangrade's proprietary software on Github.com.

On November 17, 2023, Cangrade filed a six-count complaint that seeks specific performance of the proposed Merger Agreement (Count I) and alleges breach of the MNDA (Count II), breach of the LOI and its implied covenant of good faith and fair dealing (Count III), negligence or gross negligence (Count IV), and

violations of the Defend Trade Secrets Act, 18 U.S.C. § 1831 et
seq. ("DTSA") (Count V) and Massachusetts Trade Secrets Act,
M.G.L. c. 93, § 42 et seq. ("MUTSA") (Count VI).

Paylocity moves to dismiss Counts I and III pursuant to
Fed. R. Civ. P. 12(b)(6) and to transfer Counts II, IV, V and VI
to the United States District Court for the Northern District of
California.  Alternatively, if the Court deems venue to be
proper in Massachusetts, Paylocity insists that Counts IV, V and
VI be dismissed.  Paylocity does not seek dismissal of Count II.

## II.  Legal Standard

To survive a motion to dismiss, a claim must contain
sufficient factual matter, accepted as true, to "state a claim
to relief that is plausible on its face." Bell Atl. Corp. v.
Twombly, 550 U.S. 544, 570 (2007).  In considering the merits of
a motion to dismiss, the Court may only look to the facts
alleged in the pleadings, documents attached as exhibits or
incorporated by reference and matters of which judicial notice
can be taken. Nollet v. Justices of Trial Court of Mass., 83
F. Supp. 2d 204, 208 (D. Mass. 2000), aff'd, 248 F.3d 1127 (1st
Cir. 2000).

Furthermore, the Court must accept all factual allegations
in the claim as true and draw all reasonable inferences in the
claimant's favor. Langadinos v. Am. Airlines, Inc., 199 F.3d 68,
69 (1st Cir. 2000).  If the facts in the claim are sufficient to

-4-

state a cause of action, a motion to dismiss will be denied. <u>See</u>
<u>Nollet</u>, 83 F. Supp. 2d at 208.

Although a court must accept as true all the factual
allegations in a claim, that doctrine is not applicable to legal
conclusions. <u>Ashcroft</u> v. <u>Iqbal</u>, 556 U.S. 662, 678-79 (2009).
Threadbare recitals of legal elements which are supported by
mere conclusory statements do not suffice to state a cause of
action. <u>Id.</u>

### III.  <u>Application</u>

#### A. Motion to Transfer (Counts II, IV, V and VI)

Paylocity moves to transfer Counts II, IV, V and VI of the
complaint to the Northern District of California because those
counts are subject to a forum selection clause in the CONDA
between Cangrade and Synopsys.

The subject forum selection clause is inapplicable.  While
the CONDA identifies Paylocity as a customer of Synopsys,
Paylocity is not a party to the CONDA.  That agreement is
between Synopsys and Cangrade and states that "there are no
third-party beneficiaries of this agreement".  It even
references a separate agreement between Synopsys and Paylocity.

Paylocity cites no case law (and the Court is aware of none)
to suggest that a third party may invoke an agreement's forum
selection clause.  The complaint's passing reference to the

CONDA does not thereby establish that Counts II, IV, V and VI arise out of or even relate to the CONDA.

Paylocity puts all its eggs in the forum selection clause basket and does not address the discretionary transfer factors set forth in 28 USC § 1404(a).  The Court accordingly declines to consider those factors and will deny Paylocity's motion to transfer.

### B. Motion to Dismiss

#### i.   Specific Performance (Count I)

Paylocity seeks to dismiss Cangrade's claim for specific performance because the LOI is not a valid contract.  Cangrade responds that the LOI is binding with respect to certain provisions, including its good faith negotiations provision, even if the LOI does not bind the parties to complete the merger itself.  The LOI is governed by Delaware law.

The complaint appears to seek enforcement of the Merger Agreement itself rather than the LOI when it seeks to compel Paylocity to "return the finalization of the Merger Agreement [and] proceed to consummate a merger agreement with Cangrade". (Emphasis added).  But a party seeking specific performance must establish that a valid contract exists.  Estate of Osborn v. Kemp, 991 A.2d 1153, 1158 (Del. 2010).  In its pleadings, Cangrade acknowledges that the Merger Agreement was still in draft form when the parties concluded their negotiations and was

-6-

therefore never executed.  The Court cannot independently assess the finality of the Merger Agreement because Cangrade failed to attach it to its complaint or to any other pleading.  Count I will be dismissed.

### ii.   Implied Covenant of Good Faith and Fair Dealing (Count III)

Cangrade contends that the implied covenant of good faith and fair dealing is incorporated in the LOI and that Paylocity "breached its express and implied duty to negotiate in good faith" when it withdrew from merger negotiations.

The implied covenant of good faith and fair dealing "is a limited and extraordinary legal remedy." Oxbow Carbon & Mins. Hldgs., Inc. v. Crestview-Oxbow Acquisition, LLC, 202 A.3d 482, 507 (Del. 2019) (citation omitted).  It only applies "when the contract is truly silent with respect to the matter at hand." Allied Cap. Corp. v. GC-Sun Hldgs., L.P., 910 A.2d 1020, 1032 (Del. Ch. 2006).  By repeatedly alleging that Paylocity violated both an express duty to negotiate in good faith as well as one implied when it engaged in the underlying conduct, Cangrade concedes that there is no contractual gap to fill. See Allen v. El Paso Pipeline GP Co., 113 A.3d 167, 183 (Del. Ch. 2014) (where agreement expressly covers issue, implied covenant will not apply).  Count III will be dismissed.

### iii.    Negligence/Gross Negligence (Count IV)

Paylocity seeks to dismiss Cangrade's negligence or gross negligence claim because 1) purely economic losses cannot support a negligence claim and 2) Cangrade fails to allege any conduct that could arise to the level of gross negligence.

While the economic loss doctrine generally precludes liability for tort claims in cases in which the plaintiff seeks only economic losses,

> Massachusetts law specifically permits recovery of economic losses caused by negligent breach of a contractual duty.

Commonwealth Care All., Inc. v. Babel Health, Inc., 2020 WL 5237697, at *2 (D. Mass. Sept. 2, 2020).  The complaint alleges that by failing to protect Cangrade's propriety software pursuant to the LOI and MNDA, Paylocity exposed Cangrade to possible theft of intellectual property and security risks, such as cybercrime and hacking.  Cangrade has plausibly alleged that Paylocity negligently breached the agreements between the parties.[1]

The allegations in the complaint cannot, however, support a claim for gross negligence.  Gross negligence is a "substantially and appreciably higher [standard] than ordinary negligence." Weinberg v. Grand Circle Travel, LLC, 891 F. Supp.

---

[1] Any claim for negligence damages will be measured by the terms of those contracts. Unum Grp. v. Benefit P'ship, 938 F. Supp. 2d 177, 187 (D. Mass. Apr. 11, 2013).

2d 228, 251 (D. Mass. 2012) (quoting <u>Altman</u> v. <u>Aronson</u>, 231 Mass. 588, 591-92 (1919)).  Negligent conduct that is continued, serious or deliberate may support a gross negligence claim. <u>Id.</u> The complaint does not allege conduct that could meet that heightened standard.  Perhaps recognizing that fact, Cangrade, in its opposition brief, suggests that discovery may reveal additional facts in support of its claim for gross negligence. That unmoored attempt to engage in a fishing expedition does not produce a plausible claim for gross negligence.

In sum, plaintiff plausibly alleges a claim for negligence, but not for gross negligence, against defendant.

### iv.   DTSA/MUTSA (Counts V, VI)

Cangrade seeks to hold Paylocity liable, pursuant to the DTSA and MUTSA under the doctrines of respondeat superior and vicarious liability, for the alleged trade secret misappropriation of Synopsys.  The Court will consider both counts together because the DTSA and MUTSA are "nearly equivalent." <u>Neural Magic, Inc.</u> v. <u>Meta Platforms, Inc.</u>, 659 F. Supp. 3d 138, 158 (D. Mass. 2023) (citation omitted).

Cangrade does not allege that Paylocity expressly or implicitly authorized Synopsys to disclose Cangrade's software. Instead, it seeks to hold Paylocity liable because Synopsys acted within the scope of the authority Paylocity granted it and

for the benefit of Paylocity when it disclosed Cangrade's
proprietary software.

Paylocity moves to dismiss Cangrade's claims for trade
secret misappropriation and argues primarily that it cannot be
held liable for the acts of Synopsys under the theory of
respondeat superior because 1) it was not in an employer-
employee relationship with Synopsys and 2) Synopsys did not act
for the benefit of Paylocity.  Defendant also argues that it
cannot be held liable pursuant to any other theory of agency
liability.

The complaint does not distinguish between vicarious
liability generally and respondeat superior, which is but one
kind of vicarious liability. See Berry v. Commerce Ins. Co., 488
Mass. 633, 637 n.3 (2021) (explaining the distinction).
However, in its opposition brief, Cangrade clarifies that it
believes respondeat superior "imposes vicarious liability" on
Paylocity and cites trade secret cases that arise in the context
of employment. See Gordon Grado M.D., Inc. v. Phoenix Cancer &
Blood Disorder Treatment Inst. PLLC, 603 F. Supp. 3d 799 (D. Az.
2022) (determining whether defendant institute may be liable for
acts of its physician and founder); Brain Injury Ass'n of Cal.
v. Yari, 2020 WL 3643482 (C.D. Cal. Apr. 30, 2020) (determining
whether non-profit may be liable for acts of a member of its

board of directors).  The Court accordingly analyzes Cangrade's
trade secret claims under the theory of respondeat superior.

Under that doctrine, an employer is held liable for the
acts of its employee when those acts are committed within the
scope of his or her employment. See Berry, 488 Mass. at 637 n.3.[2]
The Massachusetts Supreme Judicial Court has stated that

> the conduct of an agent is within the scope of
> employment if it is of the kind he is employed to
> perform, if it occurs substantially within the
> authorized time and space limits, and if it is
> motivated, at least in part, by a purpose to serve the
> employer.

Lev v. Beverly Enters.-Massachusetts, 457 Mass. 234, 238 (2010)
(cleaned up).

First, it is not clear that the theory of respondeat
superior applies at all.  Synopsys is not an employee of
Paylocity.  It is a separate corporate entity that contracted
with Paylocity to complete a discrete task. See Restatement
(Third) of Agency § 2.04 comment b (2006) (respondeat superior
does not apply where agents "are retained as the need arises and
. . . normally operate their own business enterprises"); id. §
7.07 comment f (distinguishing between employees and agents who
retain right to control how they perform work).

---

[2] Cangrade cites Illinois law because the MNDA is governed by Illinois law but
does not explain why the trade secret claims, which sound in tort rather than
contract, are governed by the applicable law of the MNDA.

In any event, Cangrade does not plausibly allege that the purpose of Synopsys' misappropriation was to serve Paylocity. Cangrade asserts that the person (or persons) at Synopsys who improperly disclosed Cangrade's software did so with an intent to harm Cangrade but does not plausibly allege that they believed the breach would benefit Paylocity in any way.  The conclusory statement in the complaint that Synopsys acted "for Paylocity's benefit" does not suffice. See Iqbal, 556 U.S. at 678.  If anything, it seems more likely that the breach would harm Paylocity given that it undermined the ongoing merger negotiations.  Cangrade does not suggest that Paylocity hoped to shut down merger negotiations prior to the alleged breach or that the breach served as a pretext.  Cangrade's trade secret claims will be dismissed.

### ORDER

For the foregoing reasons, the motion of defendant Paylocity to transfer (Docket No. 26) is **DENIED** and its motion to dismiss is, with respect to Counts I, III, V and VI, **ALLOWED**, but, with respect to Count IV, **DENIED**.

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated April 24, 2024

-12-